IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| INGENIADOR, LLC,<br><br>Plaintiff,<br><br>v.<br><br>JEFFERS, INC.,<br><br>Defendant. | CIV. NO.: 13-1654(SCC) |

**OPINION AND ORDER**

    Plaintiff Ingeniador, LLC, is the holder of U.S. Patent No. 7,895,127 (the "'127 patent"). The '127 patent teaches a rating-based method of sorting and displaying reviews, including on websites. Defendant Jeffers, Inc., is the operator of a web-based pet supply business. Via Jeffers's website, customers can buy a variety of pet-related products. Ingeniador alleges that Jeffers's website includes a system for permitting, storing, organizing, and displaying customer reviews that infringes the '127 patent.

Jeffers contends that this Court lacks personal jurisdiction over it. A district court has personal jurisdiction over a foreign defendant when the long-arm statute of the state in which the court sits "permits the assertion of jurisdiction without violating due process." *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376–77 (Fed. Cir. 1998).[1] Puerto Rico's long-arm statute is sufficiently capacious that the statutory and due process inquiries collapse into a single question. *See Benitez-Allende v. Alcan Aluminio de Brasil, S.A.*, 857 F.2d 26, 29 (1st Cir. 1988) (citing *Siderugica v. Thyssen Steel Caribbean, Inc.*, 14 P.R. Offic. Trans. 708 (1983)). Precedent recognizes two types of personal jurisdiction: general and specific. *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995). The parties agree that general jurisdiction over Jeffers does not exist here, and so we focus exclusively on whether we have specific jurisdiction over Jeffers. To establish specific jurisdiction, Ingeniador must show three things:[2] (1) that Jeffers "purposefully directed" its

---

1. Because this is a patent case, we apply the law of the Federal Circuit, rather than the First Circuit, to the personal jurisdiction inquiry. *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998).

2. Where, as here, the personal jurisdiction inquiry is "based on affidavits and other written materials in the absence of a jurisdictional hearing,

activities towards Puerto Rico; (2) that the cause of action against Jeffers "arises out of" those activities; and (3) that the exercise of jurisdiction would be constitutionally reasonable. *Id.* at 1546–49.

Primarily, the parties' filings dispute whether Jeffers has purposefully directed its activities towards Puerto Rico; more specifically, the parties spend a great deal of time arguing about whether Jeffers's website, which allows customers from Puerto Rico to buy products and have them shipped to Puerto Rico, is sufficient to satisfy the first prong of the specific jurisdiction test under *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Penn. 1997). *Zippo Manufacturing*, which dates from near the beginning of the e-commerce revolution, is considered to be the seminal case on whether websites, which typically may be viewed from any jurisdiction, can create personal jurisdiction. *Zippo Manufacturing* held that the existence of personal jurisdiction over a foreign defendant depended on "the nature and quality of commercial activity

---

a plaintiff need only make a" prima facie case that personal jurisdiction exists. *Elecs. for Imaging, Inc. v. Coyle*, 304 F.3d 1344, 1349 (Fed. Cir. 2003). In such circumstances, we "must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Id.*

INGENIADOR v. JEFFERS                                                      Page 4

that [the defendant] conducts over the Internet." *Id.* at 1124. The court understood that there would be a spectrum of internet contacts. On one end, it placed defendants that "clearly do[] business over the Internet," *e.g.*, by "enter[ing] into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet"; in these circumstances, the court held, "personal jurisdiction is proper." *Id.* On the other end of the spectrum were cases where the defendants simply operated "passive Web site[s] that do[] little more than make information available to those who are interested"; jurisdiction over these defendants would not be proper. *Id.* The harder cases, in the court's opinion, were defendants with "interactive Web sites where a user can exchange information with the host company"; in such circumstances, jurisdiction would depend on "the level of interactivity and commercial nature of the exchange of information that occurs." *Id.*

At a minimum, the Second, Third, Fourth, Fifth, Sixth, Eighth and Ninth Circuits have concluded that *Zippo Manufacturing* created a useful paradigm for considering minimum

contacts in the internet context.[3] *See, e.g.*, *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 252 (2d Cir. 2007); *Lakin v. Prudential Secs., Inc.*, 348 F.3d 704, 711 (8th Cir. 2003); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003); *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 713 (4th Cir. 2002); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997). Only the Seventh Circuit has explicitly rejected *Zippo Manufacturing*, *see Tamburo v. Dworkin*, 601 F.3d 693, 703 n.7 (7th Cir. 2010) (declining to "fashion a special jurisdictional test for Internet-based cases"), though it *has* considered the relevancy of website interactivity to the personal jurisdiction inquiry, *see Jennings v. AC Hydraulics A/S*, 383 F.3d 546, 549–50 (7th Cir. 2004) (finding that personal jurisdiction could not be based on the operation of a passive website). In any case, most courts

---

**3.** Likewise, the First Circuit has acknowledged that *Zippo Manufacturing* might be useful in the specific jurisdiction context. *See Cossaboon v. Me. Med. Ctr.*, 600 F.3d 25, 36 n.5 (1st Cir. 2010). And the Eleventh Circuit has acknowledged that *Zippo Manufacturing* has been widely followed by the federal courts, though it had been the subject of some scholarly criticism. *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1219 n.26 (11th Cir. 2009). (Notably, the one scholarly article that *Oldfield* cites criticizes *Zippo Manufacturing* for being *too restrictive* in its findings of personal jurisdiction. *Id.*)

relying on *Zippo Manufacturing* have not viewed it as a replacement for the typical due process inquiry; instead, they have seen it as offering helpful guideposts for applying that general inquiry to the specific context of interactive websites. *See, e.g.*, *Best Van Lines*, 490 F.3d at 252 ("As the *Zippo* court itself noted, personal jurisdiction analysis applies traditional principles to new situations."); *Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.*, 645 F. Supp. 2d 1130, 1142 (S.D. Fla. 2009) (holding that while the *Zippo Manufacturing* analysis is not dispositive, it may be used "as a guidepost" in "analyz[ing] the purposeful availment requirement").

The Federal Circuit has only once cited *Zippo Manufacturing*, but it has done so in a way that suggests that it may offer useful guidance in a case like this. In *Trintec Industries, Inv. v. Pedre Promotional Products, Inc.*, the Federal Circuit considered a district court's dismissal of a patent suit for lack of personal jurisdiction. *See* 395 F.3d 1275, 1277 (Fed. Cir. 2005). As part of its case for jurisdiction, the plaintiff in *Trintec* pointed to the fact that the defendant maintained an interactive website over which individuals in the court's jurisdiction could buy allegedly-infringing products. *See id.* at 1278. The Circuit held that because the website was "available to all customers

| INGENIADOR v. JEFFERS | Page 7 |
|---|---|

throughout the country," it did not by itself specifically target the jurisdiction. *Id.* at 1281 (internal quotations omitted). The Circuit then considered *Zippo,* but it concluded that its applicability to the case was not obvious because it was unclear whether or how often the website's interactive sales features had been used in the jurisdiction. *Id.* (citing *Zippo Mfg.*, 952 F. Supp. at 1125–26). Furthermore, the other facts in addition to the website that the plaintiff had adduced, such as the dollar value of products sold in the district, were insufficiently specific because they did not say whether the products sold were infringing. *Id.* at 1282. Still, the Circuit concluded that the record before the district court "suggested that [the plaintiff] made a prima facie showing of personal jurisdiction." *Id.* at 1283. Reversing the district court's order of dismissal, the Circuit then remanded to the district court for further proceedings, including, if necessary, jurisdictional discovery.[4] *Id.* ("*If* the district court concludes that the existing record is insufficient to support personal jurisdiction, [the plaintiff] is entitled

---

**4.** A look at the docket in the underlying case reveals that on remand, the district court ordered jurisdictional discovery, but the parties settled before that discovery could be completed. *See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, No. 1:03-CV-01267-RCL (D.D.C. filed June 12, 2003).

| INGENIADOR v. JEFFERS | Page 8 |
|---|---|

to jurisdictional discovery." (emphasis added)). District courts have thus tended to understand *Trintec* as acknowledging that sales via a website may create specific personal jurisdiction. *See, e.g.*, *M2M Solutions LLC v. Simcom Wireless Solutions Co.*, 935 F. Supp. 2d 740, 745 (D. Del. 2013) (citing *Trintec* for the proposition that the Federal Circuit "has indicated that the interactivity of a web-site is relevant to the personal jurisdiction analysis"); *see also Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.*, 645 F. Supp. 2d 1130, 1139 (S.D. Fla. 2009); *Laseraim Tools, Inc. v. SDA Mfg., LLC*, 624 F. Supp. 2d 1027, 1032 (E.D. Ark. 2008).[5]

Here, the evidence shows that some 0.20% of Jeffers's

---

5. One of the district court cases following *Trintec* that we have found most helpful to Jeffers's position is *Original Creations, Inc. v. Ready Am., Inc.*, 836 F. Supp. 2d 711 (N.D. Ill. 2011). There, the court interpreted *Trintec* as holding that "the Federal Circuit will not find that mere allegations of potential, but as-yet-unquantified, sales to forum residents via a defendant's website are sufficient to support an exercise of personal jurisdiction." *Id. at* 715. Thus, the court concluded that on the basis of a single documented sale to a forum resident via the defendant's website, which did not target the forum in any specific way, there was no personal jurisdiction. *Id.* at 716. But even so, it acknowledged that internet sales, if they are sufficiently numerous or show indicia of targeting the forum, may support the exercise of jurisdiction. *Id.* (citing *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (finding the exercise of jurisdiction warranted where there were substantial internet sales and the website excluded certain jurisdictions but not the forum jurisdiction)).

| INGENIADOR v. JEFFERS | Page 9 |
|---|---|

orders since 2011 have come from Puerto Rico. *See* Docket No. 7-1, ¶ 19. This amounts to a minimum of 200 orders fulfilled to Puerto Rico customers over that time period.[6] Since January 2013, Jeffers's revenue from sales to Puerto Rico amounts to approximately 0.44% of its total revenue, which it says is in the "the tens of millions of dollars." *Id.* ¶ 20. This means that Jeffers has generated at least $44,000 (and perhaps much more)[7] in revenue from sales to Puerto Rico customers in 2013 alone. Furthermore, Jeffers gives special treatment to orders made from Puerto Rico: because it cannot calculate shipping charges for Puerto Rico residents before the time of shipment, Jeffers sends a special confirmation email at the time of shipment informing the customer of those charges; the website also provides a special procedure whereby a Puerto Rico

---

6. According to Jeffers, it has received "hundreds of thousands" of orders since 2011. *See* Docket No. 7-1, ¶ 19. To arrive at the figure of 200 orders, we multiplied a very conservative estimate of the orders—100,000—by the 0.20% of orders that are said to have been made to Puerto Rico customers. The true number of orders may be several times higher.

7. Once again, in arriving at this number we used a conservative estimate of $10,000,000 as total 2013 revenues, despite the fact that Jeffers itself said that its revenues in that period were "ten*s*" of millions. Accordingly, the true amount may several times higher.

customer can learn of these charges prior to the order being shipped. *See* Docket No. 9-5, at 2. We conclude that these facts are sufficient to find that Jeffers has purposefully directed its activities at this forum. First, it operates a highly interactive website via which forum residents can make purchases. Second, Jeffers fulfills those orders by sending its products into the forum.[8] Third, these sales are not potential or speculative; to the contrary, they number in the hundreds in the last several years alone, and they have generated a not insignificant amount of revenue for Jeffers. And finally, Jeffers has specifically targeted Puerto Rico by establishing special shipping procedures that apply to sales to the Commonwealth (and a few other jurisdictions), but not to most others. *Cf. Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 757–58 (7th Cir. 2010) (holding that the defendant's website's exclusion of sales to a single state implied that it had "expressly elected" to do business

---

8. We reject Jeffers's reliance on *J. McIntyre*, which is a case concerning specific personal jurisdiction predicated on a stream of commerce theory. *See J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011). Jeffers's products do not reach Puerto Rico via the stream of commerce; they are shipped directly to the forum *by Jeffers,* pursuant to transactions made on Jeffers's website. Stream of commerce principles are therefore inapplicable.

with the other forty-nine, including the forum state); *EON Corp. IP Holdings v. AT&T Mobility, LLC*, 879 F. Supp. 2d 194, 206 (holding that a website specifically targeted Puerto Rico where it referenced special "process[es] specific to Puerto Rico"). Purposeful availment having been shown, we proceed to the rest of the specific jurisdiction analysis.

The second issue is whether Ingeniador's claim arises out of or is related to Jeffers's activities directed at Puerto Rico. *See Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1330 (Fed. Cir. 2008) (noting the test's disjunctive nature). Jeffers's directs its website to Puerto Rico for the purposes of making product sales. Its products are displayed on its website, accompanied by the allegedly-infringing customer rating system. The purpose of this system is quite obviously to help Jeffers sell its products. In this sense, Jeffers is using the allegedly-infringing service as part of its forum-directed activities, and the test is easily satisfied. *See id.* at 1332 (explaining that in the patent context, the test is satisfied if the claim arises out of or relates to the infringing product's use in the forum).

Finally, we consider whether subjecting Jeffers to jurisdiction in this forum would be reasonable and fair. Courts

consider a number of considerations in making this determination, *see Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1355 (Fed. Cir. 2003), but the bottom line is that when a defendant, like Jeffers, has "purposefully directed his activities at forum residents seeks to defeat jurisdiction, [it] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). In its motion to dismiss, Jeffers correctly cites the relevant factors, *see* Docket No. 7, at 8–9 (citing *Deprenyl*, 297 F.3d at 1355), but it neither elaborates further upon them or makes any effort whatsoever to apply them to the circumstances of this case. Jeffers has thus failed to make any case—much less a compelling one—that jurisdiction is unreasonable, and this is grounds enough to decide the matter. In its reply, Jeffers does for the first time flesh out its argument. This is procedurally improper, *see* Loc. Civ. R. 7(c) (providing that new matters cannot be raised for the first time in a reply brief), but even if we consider Jeffers's late arguments, we would necessarily reject them. Essentially, Jeffers makes much of how burdensome it will be to litigate in Puerto Rico, but as the Supreme Court explained in *Burger King*, "because 'modern

| INGENIADOR v. JEFFERS | Page 13 |
|---|---|

transportation and communications have made it much less burdensome for a party sued to defend [it]self in a State where [it] engages in economic activity,' it will usually not be unfair to subject [it] to the burdens of litigating in another forum for disputes relating to such activity." 471 U.S. at 474 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Indeed, in *Burger King* the Court held that it did not offend due process to force an individual franchisee to litigate in Florida despite the fact that his residence was in Michigan. *Id.* at 484 (holding that while proceeding in Florida was likely inconvenient, that inconvenience was not "so substantial as to achieve *constitutional* magnitude"). We therefore reject Jeffers's argument that this Court's assertion of jurisdiction would offend notions of fair play and basic justice.[9]

---

9. Jeffers also argues that by asserting jurisdiction over it, an Alabama resident, despite its lack of minimum contacts with this forum, we would be "diminish[ing] the sovereignty of Alabama." Docket No. 13, at 9. But because we have found that Jeffers *does* have sufficient contacts with Puerto Rico, this argument fails. Finally, Jeffers argues that "Puerto Rico has no greater interest in providing an adequate forum than a state where the accused infringer resides." *Id.* This may well be true, but it misapprehends the relevant inquiry. Puerto Rico certainly has a "manifest interest in providing effective means for redress of its residents," *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984), and for holding Jeffers "answerable on a claim related to the contacts

| | |
|---|---|
| INGENIADOR v. JEFFERS | Page 14 |

Before concluding, we briefly address two cases on which Jeffers heavily relies, both of which involve Ingeniador (represented by the same counsel as here). *See Ingeniador, LLC v. Interwoven* (hereinafter, "*Interwoven I*"), 874 F. Supp. 2d 56 (D.P.R. 2012); *Ingeniador, LLC v. Interwoven* (hereinafter, "*Interwoven II*"), 882 F. Supp. 2d 274 (D.P.R. 2012). Both of these case concerned a different patent owned by Ingeniador, which covered an internet publishing system. *See Interwoven I*, 874 F. Supp. 2d at 59. Ingeniador sued a large number of defendants for selling products that it claimed infringed on its patent. *See id.* In *Interwoven I*, several of the defendants moved to dismiss for lack of personal jurisdiction, and the court granted all of the movants' requests. *Id.* Two of the defendants in that case had contacts with Puerto Rico that were arguably similar to Jeffers's. First, Compulink had made a small number of sales in Puerto Rico via resellers, amounting to some 0.01% of its revenue (or just under $3,000). *See id.* at 63. These sales—which were, moreover, indirect—were much less substantial than Jeffers's direct sales to Puerto Rico. And yet, the court held that

---

[Jeffers] established" within its borders, *Burger King*, 471 U.S. at 482–83. Without a stronger showing of unfairness by Jeffers, this is all that is necessary.

| INGENIADOR v. JEFFERS | Page 15 |
|---|---:|

they "may be sufficient to show that Compulink directed its activity towards" Puerto Rico. *Id.* It did not decide the matter, however, because there was no allegations that those sales included infringing products, and thus the infringement claim could not be said to arise out of the forum-specific contacts. *Id.* Such an infirmity does not exist here, however, where the infringing method was used as part of Jeffers's forum-specific contacts.[10] And with respect to the defendant Tridion, the plaintiffs alleged that specific jurisdiction existed because of sales over Tridion's website. *See id.* at 63–64. The *Interwoven I* court rejected this argument, but only because no evidence had been offered suggesting that the internet sales were of infringing products. *Id.* at 64 ("[I]f Plaintiff had demonstrated its cause of action arose out of the sale of products from this website to Puerto Rico, then the existence of the interactive website might have been sufficient to hold personal jurisdiction over Tridion."). Here, by contrast, the cause of action does arise out of the alleged infringement. Finally, in *Interwoven II*, the court held that personal jurisdiction did not exist as to another

---

10. The *Interwoven I* court also held that it would offend notions of fair play and substantial justice, 874 F. Supp. 2d 56, 63 (D.P.R. 2012), but we do not endorse that analysis for the reasons stated in our discussion above.

| INGENIADOR v. JEFFERS | Page 16 |
|---|---|

defendant, Bridgeline, because once again no evidence suggested that infringing products had been sold over its website. *Interwoven II*, 882 F. Supp. 2d at 275. Again, these facts do not mirror those of the present case.

Having found all three specific jurisdiction factors satisfied, we DENY Jeffers's motion to dismiss.[11]

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 26th day of June, 2014.

      S/ SILVIA CARREÑO-COLL

      UNITED STATES MAGISTRATE JUDGE

---

**11.** Jeffers's argument that venue is improper is rejected because "[v]enue in a patent action against a corporate defendant exists wherever there is personal jurisdiction." *Trintec*, 395 F.3d at 1280.